UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

CARL GENE THYMES                    CIVIL ACTION NO. 6:19-cv-00090

VERSUS                              JUDGE SUMMERHAYS

AT&T MOBILITY SERVICES, LLC,        MAGISTRATE JUDGE HANNA
ET AL.

## REPORT AND RECOMMENDATION

This Court undertook a *sua sponte* review of the court's subject-matter jurisdiction over this action and a *sua sponte* review of the plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Court then ordered the plaintiff to amend his complaint. (Rec. Doc. 12). The plaintiff complied with the order and filed an amended complaint. (Rec. Doc. 13). Having carefully reviewed the amended complaint (Rec. Doc. 13) and for the reasons fully explained below, this Court now recommends that the claims asserted in the plaintiff's amended complaint (Rec. Doc. 13) should be dismissed without prejudice either for lack of subject-matter jurisdiction or for failure to state a claim upon which relief can be granted by the court.

## Background

In June 2018, the plaintiff filed a lawsuit in the United States District Court for the Western District of Louisiana, which was assigned Civil Action No. 6:18-cv-00867. The plaintiff asserted claims against AT&T Mobility Services, LLC; Sans

Chevaux Investments, LLC; CIA/Cointelpro; L'Auberge Casino and Hotel; and the United States Equal Employment Opportunity Commission.  This Court conducted a *sua sponte* jurisdictional review and recommended that the suit be dismissed for lack of subject-matter jurisdiction.  (Rec. Doc. 105 in No. 6:18-cv-00867).  The recommendation was adopted, and the suit was dismissed without prejudice.  (Rec. Doc. 107 in No. 6:18-cv-00867).

In January 2019, the plaintiff removed a suit from the 15th Judicial District Court, Lafayette Parish, Louisiana, to the United States District Court for the Western District of Louisiana, which was assigned Civil Action No. 6:19-cv-00060. In the removal notice, Mr. Thymes stated that the suit had been brought against him by San Chevaux Investments, LLC under Docket No. 20190295 on the state court's docket, but the plaintiff did not attach a copy of the state-court petition to his complaint.  The plaintiff alleged subject-matter jurisdiction under 28 U.S.C. § 1331 based on alleged violations of the Fair Housing Act.  But there was no evidence that the claims asserted against Mr. Thymes by the plaintiff in the state-court action arose under federal law.  Instead, Mr. Thymes attempted to assert a counter-claim against Sans Chevaux Investments, LLC and others – the same parties he had sued in the earlier lawsuit – under the Fair Housing Act.  (Rec. Doc. 6 in No. 6:19-cv-00060). Because he had not requested leave of court to file the counter-claim, however, the counter-claim was stricken from the record.  (Rec. Doc. 15 in No. 6:19-cv-00060).

Mr. Thymes also reiterated the claims he had asserted in Civil Action No. 6:18-cv-00867. Accordingly, the case was dismissed for lack of subject-matter jurisdiction. (Rec. Doc. 5 in No. 6:19-cv-00060).

Mr. Thymes then filed this third lawsuit, which was assigned Civil Action No. 6:19-cv-00090. He again sued the same five defendants: AT&T Mobility Services, LLC; Sans Chevaux Investments, LLC; CIA/FBI/COINTELPRO;[1] L'Auberge and Hotel Casino/Pinnacle Entertainment; and the United States Equal Employment Opportunity Commission ("EEOC"). Suspecting that the court might lack subject-matter jurisdiction over the third lawsuit, this Court ordered Mr. Thymes to appear in court and show cause why this lawsuit should not be dismissed on the same grounds as his two previous lawsuits. (Rec. Doc. 4). Mr. Thymes appeared as ordered on February 21, 2019, and a hearing was held with regard to the factual allegations underlying the claims asserted in this lawsuit.

Following the hearing, Mr. Thymes was ordered to file an amended complaint. (Rec. Doc. 12). More particularly, he was ordered to "clearly state the basis for the court's subject-matter jurisdiction and set forth all facts necessary to

---

[1]    In the amended complaint, the plaintiff used several variations of the moniker "CIA/FBI(COINTELPRO)" to refer to this defendant, including "CIA/FBI," "CIA/(FBI)COINTELPRO," "CIA/FBI(Cointelpro)," and "CIA/COINTELPRO." This Court understands this defendant to be a federal agency or agencies, comprised of agents of the Central Intelligence Agency, the Federal Bureau of Investigation, or both. For the sake of consistency, this defendant will be referred to hereinafter as "CIA/FBI."

3

support a finding that the court has subject-matter jurisdiction." (Rec. Doc. 12 at 19). He was ordered to state, "with regard to each and every one of [his] claims against each and every defendant. . . the federal statute that the plaintiff claims the defendant violated,. . . [and] the facts supporting the claim, including, at a minimum, who did what, when it was done, and what damages resulted." (Rec. Doc. 12 at 19). With regard to his Section 1983 and *Bivens* claims, he was ordered to identify the Constitutional provisions allegedly violated, the persons who violated them, and when the violation occurred. (Rec. Doc. 12 at 20). With regard to his conspiracy claims, he was ordered to "identify the persons who conspired, the purpose of the conspiracy, the actions taken pursuant to the conspiracy, the time period when those actions occurred, and the federal statute that was allegedly violated." (Rec. Doc. 12 at 20). The plaintiff was cautioned that claims outside the scope of the court's subject-matter jurisdiction and claims failing to satisfy the requirements of Rule 12(b)(6) of the Federal Rules of Civil Procedure would be dismissed. (Rec. Doc. 12 at 19).

The plaintiff then filed an amended complaint. This Court reviewed the amended complaint to determine whether the claims fall within the scope of the court's subject-matter jurisdiction and whether the plaintiff has stated a claim against each of the five defendants upon which relief can be granted by the court.

4

# Law and Analysis

## *Pro Se* Status

Mr. Thymes is proceeding in this lawsuit without the assistance of legal counsel. A *pro se* litigant's pleadings are construed liberally[2] and held to "less stringent standards than formal pleadings drafted by lawyers."[3] However, a *pro se* "plaintiff must prove, by a preponderance of the evidence, that the court has jurisdiction based on the complaint and evidence."[4] A *pro se* plaintiff must also abide by the rules that govern federal courts[5] and properly plead sufficient facts that, when liberally construed, state a plausible claim to relief.[6]

A court may *sua sponte* dismiss a plaintiff's claims on its own motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim so long as the plaintiff has notice of the court's intention to do so and an opportunity to respond.[7]

---

[2]    *Nerren v. Livingston Police Dept.*, 86 F.3d 469, 472 (5th Cir. 1996).

[3]    *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981)).

[4]    *Dos Santos v. Belmere Ltd. Partnership*, 516 Fed. App'x 401, 402-03 (5th Cir. 2013) (citing *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995), and *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

[5]    *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (citing *Frazier v. Wells Fargo Bank, N.A.*, 541 Fed. App'x 419, 421 (5th Cir. 2013)).

[6]    See *Frazier v. Wells Fargo Bank, N.A.*, 541 Fed. App'x at 421-22.

[7]    See *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling C*o., 742 F.2d 234, 236 (5th Cir. 1984)).

However, a court should generally allow a *pro se* plaintiff an opportunity to amend his complaint before dismissing it for failure to state a claim.[8]

In this case, Mr. Thymes was given an opportunity to amend his complaint (Rec. Doc. 12) and he took advantage of that opportunity by filing the amended complaint (Rec. Doc. 13). This Court additionally advised Mr. Thymes that "any claim set forth in the amended complaint that falls outside the scope of the court's subject-matter jurisdiction will be dismissed" and that "any claim set forth in the amended complaint that does not satisfy the requirements of Rule 12(b)(6) of the Federal Rules of Civil Procedure will be dismissed."  (Rec. Doc. 12 at 19). Accordingly, this Court has afforded the plaintiff the protections necessitated by his *pro se* status.

## Subject-Matter Jurisdiction

Federal district courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution and by statute.[9]  Accordingly, federal courts have subject-matter jurisdiction only over civil actions presenting a federal question[10] and those in which the amount in controversy exceeds $75,000 exclusive

---

[8]    *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998).

[9]    See, e.g., *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[10]    28 U.S.C. § 1331.

of interest and costs and the parties are citizens of different states.[11]  A suit is presumed to lie outside a federal court's jurisdiction until the party invoking federal-court jurisdiction establishes otherwise.[12]

Absent subject-matter jurisdiction, a federal court has no power to adjudicate claims and must dismiss an action if subject-matter jurisdiction is lacking.[13] "Federal courts, both trial and appellate, have a continuing obligation to examine the basis for their jurisdiction. The issue may be raised by parties, or by the court *sua sponte*, at any time."[14]  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[15]  A district court may dismiss a case for lack of subject-matter jurisdiction on the basis of "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3)

---

[11]     28 U.S.C. § 1332.

[12]     *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. at 377).

[13]     *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998); *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994).

[14]     *MCG, Inc. v. Great Western Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990).  See, also, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n. 5 (5th Cir.2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.").

[15]     Fed. R. Civ. P. 12(h)(3).

the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[16]

The party asserting federal jurisdiction has the burden of proving its existence by a preponderance of the evidence.[17]   Accordingly, the plaintiff must bear that burden in this case.

## Diversity Jurisdiction

A federal court may exercise "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000," and the parties are "citizens of different States."[18]   The amended complaint does not allege that the court's subject-matter jurisdiction is grounded on diversity, and it does not contain information sufficient for this Court to determine whether the parties are diverse in citizenship.   Therefore, this Court finds that the plaintiff did not establish subject-matter jurisdiction under 28 U.S.C. § 1332.

---

[16]    *St. Tammany Parish v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

[17]    *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. at 377; *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir.2008); *Howery v. Allstate Ins. Co*., 243 F.3d at 919.

[18]    28 U.S.C.A. § 1332.

## Federal-Question Jurisdiction

Federal courts possess original jurisdiction over civil actions arising under federal law.[19]  "A suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."[20]  Federal-question jurisdiction is most frequently invoked when federal law creates the cause of action.[21]  However, federal-question jurisdiction has also been found in some state-law claims if "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."[22]

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."[23]  In other words, federal-question jurisdiction "exists when 'a well-

---

[19]    28 U.S.C. § 1331.

[20]    *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).

[21]    *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

[22]    See *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).

[23]    *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)).  See, also, *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).

pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"[24]  Generally, a suit arises under federal law for purposes of establishing federal-question jurisdiction if there appears on the face of the complaint some substantial, disputed question of federal law.[25]  A *pro se* complaint must comply with the well-pleaded complaint rule.[26]

In the amended complaint, Mr. Thymes alleged that the court has subject-matter jurisdiction based on a federal question arising under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 1981; the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and the Fair Housing Act, 42 U.S.C. § 3604(b).  He also alleged a deprivation of rights under 42 U.S.C. § 1983.  Each of these alleged bases for subject-matter jurisdiction will be discussed below.

---

[24]     *Borden v. Allstate Ins. Co*., 589 F.3d 168, 172 (5th Cir. 2009) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).

[25]     *Carpenter v. Wichita Falls Independent School Dist*., 44 F.3d 362, 366 (5th Cir. 1995).

[26]     See, e.g., *Vela v. Manning*, 469 Fed. App'x 319, 321 (5th Cir. 2012); *Lai v. Guller*, No. 3:18-CV-1121-B-BK, 2018 WL 6174220, at *2 (N.D. Tex. Nov. 7, 2018), report and recommendation adopted, 2018 WL 6172063 (N.D. Tex. Nov. 26, 2018); *McGee v. McGee*, No. 18-cv-0807, 2018 WL 3342060, at *2 (W.D. La. June 21, 2018), report and recommendation adopted 2018 WL 3341793 (W.D. La. July 6, 2018); *Allsbrook v. Osbourn*, No. 2018 WL 3041195, at *2 (W.D. La. Mar. 29, 2018), report and recommendation adopted, 2018 WL 3040018 (W.D. La. June 19, 2018).

## The Standard for Evaluating a Claim under Fed. R. Civ. P. 12(b)(6)

A claim is properly dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure when it fails to state a legally cognizable claim.[27]  In analyzing whether a valid claim has been stated, a district court must limit itself to the contents of the pleadings, including any attachments thereto,[28] accept all well-pleaded facts as true, and view the facts in a light most favorable to the plaintiff.[29]  Conclusory allegations and unwarranted deductions of fact are not accepted as true,[30] and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[31]

To survive Rule 12(b)(6) scrutiny, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[32]  The allegations must be sufficient "to raise a right to relief above the speculative level,"[33] and "the pleading

[27]    *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[28]    *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[29]    *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[30]    *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Co*., 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498.

[31]    *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[32]    *Bell Atlantic v. Twombly*, 550 U.S. at 570.

[33]    *Bell Atlantic v. Twombly*, 550 U.S. at 555.

must contain something more. . . than. . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."[34]  "While a complaint. . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[35]  If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[36]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37]  "[D]etermining whether a complaint states a plausible claim for relief. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[38]  Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter

---

[34]    *Bell Atlantic v. Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

[35]    *Bell Atlantic v. Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted; emphasis added).  See, also, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[36]    *Bell Atlantic v. Twombly*, 550 U.S. at 570.

[37]    *Ashcroft v. Iqbal*, 556 U.S. at 678.

[38]    *Ashcroft v. Iqbal*, 556 U.S. at 679.

(taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[39]

## The Plaintiff's RICO Claims

In the amended complaint, the plaintiff attempted to assert a claim against each of the five defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq*. RICO creates a civil cause of action for any person whose business or property was injured by another's violation of the statute.[40] To establish standing to bring a private suit under RICO, a plaintiff must satisfy two elements: injury and causation.[41]

Mr. Thymes lacks standing to bring his RICO claims because he has not alleged an injury to his business or property. Personal injuries and losses flowing therefrom are insufficient to establish RICO standing.[42] "A plaintiff may not sue under RICO unless he can show concrete financial loss."[43] In this case, however, the only financial losses alleged by Mr. Thymes are his gambling losses. While he

---

[39]    *Lormand v. US Unwired, Inc*., 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. at 556). See, also, *In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008).

[40]    18 U.S.C. § 1964(c).

[41]    *Price v. Pinnacle Brands, Inc*., 138 F.3d 602, 606 (5th Cir. 1998).

[42]    *Vickers v. Weeks Marine, Inc*., 414 Fed. App'x 656, 657 (5th Cir. 2011) (per curiam).

[43]    *Patterson v. Mobil Oil Corp*., 335 F.3d 476, 492 n. 16 (5th Cir. 2003) (citing *In re Taxable Mun. Bond Securities Litigation*, 51 F.3d 518, 523 (5th Cir. 1995)).

attempted to tie those losses to actions by L'Auberge that supposedly kept him in the casino longer than he had planned to be there, those losses were the result of his own voluntary actions and were not directly caused by the actions of L'Auberge or any other defendant.  This Court therefore finds that Mr. Thymes did not allege that his business or property was damaged nor did he allege facts showing a causal connection between his alleged losses and the actions of the defendants. Consequently, he lacks standing to bring a RICO claim.  Because standing is jurisdictional,[44] Mr. Thymes is "not entitled to have [his] claim[] litigated in federal court,"[45] and his RICO claim does not give the court subject-matter jurisdiction over this action.

Mr. Thymes also failed to allege facts sufficient to state a civil RICO claim. To state such a claim, a plaintiff must allege facts related to three elements:  (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.[46]  "A pattern of racketeering activity consists of two or more predicate criminal acts that are (1)

---

[44]    *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 769 (5th Cir. 2011); *7547 Corp. v. Parker & Parsley Development Partners, L.P.*, 38 F.3d 211, 217 (5th Cir. 1994).

[45]    *7547 Corp. v. Parker & Parsley Development Partners, L.P.*, 38 F.3d at 217.

[46]    *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 523-24 (5th Cir. 2016); *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009); *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).

related and (2) amount to or pose a threat of continued criminal activity."[47]    The predicate criminal acts can be violations of either state or federal law.[48]

The only allegations of criminal activity set forth in the amended complaint are the plaintiff's allegations that CIA/FBI broke into his home and committed "hate crimes."  But the plaintiff cannot state a RICO claim against CIA/FBI.  "[E]very court to address the issue has found that the Federal Government and its employees are immune from suit under the civil RICO statute."[49]  Furthermore, the Fifth Circuit has rejected the idea that a federal agency can be sued under the RICO statute.[50]

With regard to the other four defendants, there are no allegations in the amended complaint establishing racketeering activity, much less a pattern of such activity.  The statute defines the term racketeering activity as including certain offenses listed in 18 U.S.C. § 1961.  Mr. Thymes did not allege that the other defendants committed any of the listed crimes.  In fact, he did not allege that those defendants engaged in any criminal activity whatsoever.  For that reason, he did not

---

[47]    *St. Germain v. Howard*, 556 F.3d at 263.

[48]    *St. Germain v. Howard*, 556 F.3d at 263.

[49]    See *McLean v. Obama*, No. 15-8, 2015 WL 3966426, at *2 (E.D. La. June 30, 2015) (collecting cases).

[50]    *McNeily v. United States*, 6 F.3d 343, 350 (5th Cir. 1993) (citing *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) ("there can be no RICO claim against the federal government.")).

establish that the defendants engaged in predicate criminal acts necessary to establish either racketeering activity or a pattern of racketeering activity.

Furthermore, Mr. Thymes has not alleged any facts supporting the existence of an agreement among the five defendants to form or advance a criminal enterprise. RICO defines the term enterprise as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."[51]   "[A] RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."[52]   The only part of the amended complaint that might generously be construed as alleging the existence of a conspiracy has to do with L'Auberge and the federal agents.   Mr. Thymes alleged that "if L'Auberge Casino Hotel has formed a conspiracy with these corrupt agents, then that is a crime."[53]   But this is not a factual allegation that L'Auberge conspired with CIA/FBI to engage in criminal activity; instead, it is a purely conjectural speculation, signified by the use of the word "if."   There are no factual allegations in the amended complaint regarding a connection between the five defendants sufficient to support a finding that there was any type of collusion,

---

[51]    18 U.S.C. § 1961(4).

[52]    *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) (quoting *Tel-Phonic Services, Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990)).

[53]    Rec. Doc. 13 at 23.

conspiracy, or coordinated actions or activities between them, and there are no factual allegations showing that the defendants associated for the purpose of engaging in a particular course of conduct. In fact, the plaintiff has cobbled together distinct claims against five completely unrelated defendants that likely should not have been brought in the same proceeding. One potential common denominator is that Mr. Thymes seems to be alleging that he was discriminated against by each of the defendants due to his race. But civil rights violations do not constitute racketeering activity within the meaning of RICO.[54]

In this case, the plaintiff has pleaded nothing more than conclusory allegations to support his RICO claim. He did not allege facts supporting a conclusion that he has standing to bring the claim, that the defendants engaged in criminal activity, or that the defendants entered into an enterprise, and he cannot bring a civil RICO claim against the federal agencies that he sued. For these reasons, the plaintiff has not stated a RICO claim that supports federal-question jurisdiction or that survives scrutiny under Fed. R. Civ. P. 12(b)(6). Consequently, it is recommended that his RICO claim be dismissed.

---

[54]    *Fulkerson v. Wehner Multifamily, LLC*, No. 4:18-CV-880-A, 2019 WL 95607 at *2 (N.D. Tex. Jan. 3, 2019) (citing *Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997)). See, also, *Edwards v. St. John Baptist Parish*, No. 09-4398, 2010 WL 3720436 at *13 n. 4 (E.D. La. Sept. 9, 2010) (stating that racial discrimination is not an injury to business or property and consequently cannot be used as a basis for establishing standing under RICO).

## The Section 1983 Claims

Without identifying the actions or omissions of any particular defendant, the plaintiff referred to 42 U.S.C. § 1983 in his complaint.  Section 1983 provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights.[55]  Section 1983 is not a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere.[56]  To state a Section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[57]  Whether a defendant acted under color of state law and is subject to liability under Section 1983 depends on the plaintiff's allegations.

Most rights secured by the Constitution protect only against infringement by governments.[58]  The deprivation of a federal right is attributable to the state and therefore occurs under color of law when (1) the deprivation is caused by the exercise of a right or privilege created by the state, a rule of conduct imposed by the

---

[55]    42 U.S.C. § 1983.

[56]    *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).

[57]    *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013); *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir.2000).

[58]    *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005).

state, or a person for whom the state is responsible; and (2) when the party charged with the deprivation is a state actor, either because he is a state official, because he acted together with or obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.[59]  "Private individuals generally are not considered to act under color of law."[60]  Defendants AT&T, Sans Chevaux, and L'Auberge are private companies rather than governmental entities.  Therefore, they cannot be liable to Mr. Thymes under Section 1983.

The CIA/FBI and EEOC are federal government entities.  A claim that a federal official violated constitutional rights may not be brought under Section 1983; however, such a claim might be brought under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971).[61]  The plaintiff cited *Bivens* in his complaint, but he did not expressly state that he was asserting claims against the federal agencies under *Bivens*.  Indeed, he cannot.  *Bivens* provides a cause of action only against government officers in their individual capacities.[62]  The plaintiff did not identify any individual agents or employees with the CIA or FBI whose actions might form

---

[59]    *Ballard v. Wall*, 413 F.3d at 518.

[60]    *Ballard v. Wall*, 413 F.3d at 518; *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017).

[61]    *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[62]    *Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999).

the basis of CIA/FBI's alleged liability to him. He mentioned the names of two EEOC employees, but he did not sue them. He did not identify the Constitutional provisions that he contends were violated by these agencies. This Court therefore concludes that the plaintiff did not state a claim under Section 1983 or under *Bivens* that the court can remedy. Accordingly, the Court recommends that any Section 1983 or *Bivens* claim asserted by the plaintiff should be dismissed.

**The Claim Against AT&T Mobility**

The plaintiff asserted an employment discrimination claim against AT&T Mobility. He alleged that he was employed by AT&T as a customer service representative from September 25, 2017 until March 29, 2018, when he resigned his position.[63] He alleged that, during his employment, AT&T discriminated against him, harassed him, and subjected him to a hostile work environment "for no reason but racial prejudice,"[64] which caused him to become ill and resign his position. He also alleged that the EEOC issued him a right-to-sue letter.[65]

The plaintiff's claim against AT&T Mobility is a hostile work environment claim grounded on 42 U.S.C. § 1981. The court has subject-matter jurisdiction over the claim because it is based on the alleged violation of a federal statute.

---

[63]    Rec. Doc. 13 at 15.

[64]    Rec. Doc. 13 at 13.

[65]    Rec. Doc. 13 at 13.

Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 both prohibit employers from taking adverse employment actions against employees on the basis of race, and courts use the same standard to analyze hostile work environment claims brought under Section 1981 as they do when such claims are brought under Title VII.[66]  Section 1981 affords an aggrieved employee a right of action against private actors such as AT&T Mobility.[67]

To establish a *prima facie* case of harassment constituting a hostile work environment, a plaintiff must show that: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment but failed to take prompt remedial action.[68]  While a plaintiff need not make out a *prima facie* case of harassment in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim,[69] the plaintiff must plead

---

[66]    *Eyob v. Mitsubishi Caterpillar Forklift America, Inc.*, 745 Fed. App'x. 209, 210 (5th Cir. 2018); *Felton v. Polles*, 315 F.3d 470, 483-84 (5th Cir. 2002).

[67]    *Oden v. Oktibbeha Cty.*, 246 F.3d 458, 463 (5th Cir. 2001); *Felton v. Polles*, 315 F.3d at 480.

[68]    *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

[69]    *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)

factual content that would allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[70]

A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.[71]  In determining whether a hostile work environment claim is actionable, the reviewing court must consider the totality of the circumstances, focusing on:  (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.[72]  Discourtesy, rudeness, teasing, offhand comments, and isolated incidents (unless extremely severe) do not amount to "discriminatory changes in the terms and conditions of employment."[73]  Instead, the conduct complained of must

---

[70]     *Ashcroft v. Iqbal*, 556 U.S. at 678.

[71]     *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

[72]     *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 23 (1993)).

[73]     *Indest v. Freeman Decorating, Inc*., 164 F.3d 258, 264 (5th Cir. 1999); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

be so pervasive and severe that it is both objectively and subjectively offensive.[74]  A hostile work environment is one in which the abuse is continuous, not merely episodic.[75]

In this case, there is no dispute that the plaintiff belongs to a protected group since he alleged that he is "a black American."[76]  But the amended complaint does not contain any allegations evidencing race-based harassment or establishing harassment sufficient to alter the conditions of the plaintiff's employment or create an abusive working environment.  The plaintiff did not allege that his coworkers used derogatory slurs or racially offensive comments in the workplace.  Most of the events he complained about had to do with his automobile, presumably when it was parked outside the workplace.  He alleged that gasoline was stolen out of his car on multiple occasions, but he did not allege that a coworker stole the gasoline.  He alleged that he found flying insects in his car, but he did not allege that a coworker caused the insects to be in his car.  He alleged that his car was broken into, but he did not allege that a coworker broke into it.  He alleged that his sunglasses are missing from his car, but he did not allege that a coworker stole them.  None of those

---

[74]    *E.E.O.C. v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 460 n.15 (5th Cir. 2013) (quoting *Shepherd v. Comptroller of Pub. Accounts of the State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999)).

[75]    See *Faragher v. City of Boca Raton*, 524 U.S. at 787 n.1.

[76]    Rec. Doc. 13 at 6.

incidents occurred in the workplace and there is no allegation tying these alleged occurrences to the conditions under which his work had to be performed.

The plaintiff alleged two additional separate but unrelated incidents. He alleged that a coworker gave him a contaminated breakfast burrito and that his manager swung at his head without actually hitting him. Those two isolated incidents do not support a finding that the plaintiff was subjected to harassment in the work environment that was frequent, humiliating, severe, affected his ability to do his job, or was based on his race.

The plaintiff also alleged that he was shunned at work and made to feel unwanted, but the amended complaint did not allege that the plaintiff was shunned because of his race. Further, the amended complaint does not state how often the plaintiff was shunned, who shunned him, or how this affected his ability to do his work. Thus, the plaintiff failed to allege how being shunned by his coworkers was "sufficiently severe or pervasive to alter the conditions of the [his] employment and create an abusive working environment."[77] When a plaintiff alleges that he is shunned or ostracized without also alleging specific facts concerning the nature, severity, or pervasiveness of this treatment, the allegation alone is insufficient to

---

[77]    *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

state a claim based on a hostile work environment.[78]  Because "section 1981 does not impose a general civility code,"[79] and the plaintiff has made no factual allegations suggesting that frequently being shunned by his co-workers reached a significant level of pervasiveness, the plaintiff's allegations of ostracism are insufficient to support a hostile work environment claim.

Finally, the plaintiff alleged that a coworker developed a relationship with his girlfriend, causing her to leave him.  That allegation simply does not support a work-related claim.

Even when reading all of the amended complaint's factual allegations in a light most favorable to the plaintiff, this Court finds that the plaintiff failed to plead facts establishing that the nature and frequency of his coworkers' alleged actions were objectively severe and pervasive so as to create a hostile work environment. This Court therefore declines to find a reasonable inference that the defendant is liable for the misconduct alleged.  In other words, the plaintiff failed to state a Section 1981 hostile work environment claim that the court can remedy. Accordingly, this Court recommends that this claim be dismissed.

---

[78]    *Williams v. E.I. du Pont de Nemours and Company*, 154 F.Supp.3d 407, 423-24 (M.D. La. 2015).

[79]    *Faragher v. City of Boca Raton*, 524 U.S. at 775.

**The Claim Against Sans Chevaux**

Mr. Thymes appears to have asserted two claims against Sans Chevaux, one of which appears to be a federal claim and the other of which appears to be a Louisiana state-law claim. The plaintiff alleged that he entered into a lease/purchase agreement with Sans Chevaux, through its principal, realtor Robert Leonard. He alleged that he later discovered that the house he purchased has termites, roof damage, and an air conditioner that does not blow cold air. He alleged that he brought these conditions to the attention Mr. Leonard, who refused to renegotiate the terms of the lease/purchase agreement. This appears to be a claim under the Fair Housing Act, which is a federal statute. The plaintiff also alleged that Mr. Leonard failed to provide the plaintiff with a Louisiana Residential Property Disclosure Agreement, in violation of a Louisiana statute.

The Fair Housing Act is a federal statute that prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling. . . because of race"[80] or because of a person's membership in certain other protected classes. More particularly, the Fair Housing Act makes it unlawful "to refuse to negotiate for the sale or rental of. . . a dwelling to any person because of race" or because of a person's membership in certain other protected classes.[81] The Fair

---

[80]    42 U.S.C. § 3604(b).

[81]    42 U.S.C. § 3604(a); *Cox v. City of Dallas*, 430 F.3d 734, 740 (5th Cir. 2005).

Housing Act expressly affords an aggrieved person a private right of action for discriminatory housing practices.[82]    The court would have subject-matter jurisdiction over a properly-pleaded claim under the Fair Housing Act because such a claim is based on the alleged violation of a federal statute.

In addressing the Fair Housing Act, the plaintiff alleged that he is a black American.[83]    But he did not allege that Sans Chevaux refused to renegotiate the lease/purchase agreement because he is black nor did he allege any facts that would support the conclusion that Sans Chevaux treated African-American people differently from people of other races.  In fact, he did not state how any actions or omissions of San Chevaux violated the Fair Housing Act.  Such allegations are a prerequisite to a racial discrimination claim under the Fair Housing Act.[84]  With nothing more than a nonspecific, conclusory allegation of discrimination by Sans Chevaux, the plaintiff cannot maintain his claim.  Accordingly, because the plaintiff has failed to provide any factual basis for discriminatory treatment by Sans Chevaux,

---

[82]    See 45 U.S.C. § 3613; *Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003).

[83]    Rec. Doc. 13 at 6.

[84]    See, e.g., *Banks v. United States*, No. 05-6853, 2007 WL 1030326, at *8 (E.D. La. Mar. 28, 2007).

that Court recommends that his discrimination claim under the Fair Housing Act should be dismissed for failure to state a claim.[85]

The plaintiff's second claim against Sans Chevaux is based on the allegation that Mr. Leonard failed to provide him with a form that must, in accordance with Louisiana state law, be given by a seller of residential real estate to a purchaser of such property, under La. R.S. 9:3198. This claim does not provide a basis for federal-question subject-matter jurisdiction. It is purely a state-law claim, which will be addressed again, below.

**The Claim Against L'Auberge**

The plaintiff alleged that the court has subject-matter jurisdiction over his claim against L'Auberge because it is a claim for discrimination in public accommodations in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a.[86] Title II guarantees "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public

---

[85]    See, e.g., *Williams v. Harris County Housing Authority*, No. 14-3570, 2016 WL 8730315, at *12 (S.D. Tex. Sept. 2, 2016), report and recommendation adopted, 2016 WL 5661705 (S.D. Tex. Sept. 30, 2016), appeal dismissed, 2017 WL 7201863 (5th Cir. Mar. 1, 2017) ("Plaintiff's discrimination claim under the Fair Housing Act should also be dismissed. Plaintiff has failed to provide any factual basis for discriminatory treatment by Defendant."); *Wallace v. Pinnacle Family of Companies*, No. 3:12-CV-3931-D (consolidated with No. 3:12-CV-3932-D), 2013 WL 12137737, at *1 (N.D. Tex. Jan. 28, 2013), report and recommendation adopted, 3013 WL 12137738 (N.D. Tex. Feb. 28, 2013) (dismissing the case because "Plaintiff does not explain how Defendant discriminated against him on the basis of race, color, religion, sex, handicap, family status or national origin as required by the statute.").

[86]    Rec. Doc. 13 at 12.

accommodation. . . without discrimination or segregation on the ground of race, color, religion, or national origin."[87]  A Title II claim seeks to remedy the denial to the plaintiff of the full and equal enjoyment of the services offered by a defendant establishment.[88]   The only relief available under Title II is injunctive relief; therefore, damages cannot be awarded in a Title II claim.[89]

Because there is little caselaw regarding Title II, courts frequently analyze Title II claims under Title VII jurisprudence.[90]  To state a *prima facie* case of discrimination in public accommodations, a plaintiff must show:  (1) that the plaintiff is a member of a protected class; (2) that the plaintiff attempted to contract for the services of a public accommodation; (3) that the plaintiff was denied those services; and (4) that the services were made available to similarly situated persons outside the plaintiff's protected class.[91]  Some courts have applied a modified version of the fourth element, i.e., whether the plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively

---

[87]    42 USC § 2000a(a).

[88]    See *United States v. DeRosier*, 473 F.2d 749, 752 (5th Cir.1973).

[89]    *Newman v. Piggie Park Enterprises, Inc*., 390 U.S. 400, 402 (1968) (per curiam) ("When a plaintiff brings an action under [Title II], he cannot recover damages."); *Bass v. Parkwood Hosp*., 180 F.3d 234, 244 (5th Cir. 1999) ("Unlike many other civil rights statutes, however, 42 U.S.C. § 2000a–3 allows only for prospective relief and does not authorize damage awards.").

[90]    *Fahim v. Marriott Hotel Services, Inc*., 551 F.3d 344, 349 (5th Cir. 2008).

[91]    *Fahim v. Marriott Hotel Services, Inc*., 551 F.3d at 350.

discriminatory.[92]    The modified test is typically applied in cases involving restaurants, because plaintiffs "are often unable to point to similarly situated persons outside of their protected class who were treated differently."[93]

In the amended complaint, the plaintiff alleged that he visited L'Auberge on an undisclosed date and it took over fifteen minutes for the person working the front desk to check him into his room.  He also alleged that after he went to his hotel room on the evening of June 11, 2018, the door bell twice began ringing but no one was at the door when he looked out.  He alleged that, on June 12, 2018, the valet parking personnel at L'Auberge could not locate his car.  He further alleged that they lost the keys to his car.  He alleged that hotel security gave him a car key that did not open the door to his car, and that the car is now "driving sporadic."[94]  He alleged that when he was gambling in the casino, a security guard with a walkie talkie followed him around.  He further alleged that the hostess at a restaurant in the hotel made him wait for thirty minutes before seating him for breakfast.  It is unclear whether all of these alleged incidents occurred on June 11-12, 2018.  He further contended that he lost either $15,000 or $150,000 gambling at the casino.  Again, it is unclear whether these losses occurred on those same dates or at different times.  The plaintiff alleged

---

[92]    *Fahim v. Marriott Hotel Services, Inc.*, 551 F.3d at 350 n. 2.

[93]    *McLaurin v. Waffle House, Inc.*, 178 F.Supp.3d 536, 546 (S.D. Tex., 2016).

[94]    Rec. Doc. 13 at 25.

that these incidents were part of a "conspiracy to defraud me out of my money"[95] by

"intentionally keeping [him] there to lose more money on gambling."[96]

Although the plaintiff alleged that he is a black man and expressly referenced

Title II and its protections against impairment of the right to enjoy public

accommodations, the plaintiff did not expressly allege that L'Auberge delayed

giving him access to his hotel room, delayed seating him for breakfast, lost his car,

lost his car keys, or rang the doorbell of his hotel room in order to harass him because

he is a member of a protected class. He did not allege that L'Auberge or its

employees used language that constituted racial or religious slurs, nor did he allege

that any other unpleasant incident could be directly linked to his race or to his

membership in any other protected class. Unkind, rude, or boorish behavior standing

alone generally will not support a claim under Title II.[97] Therefore, even if true, the

allegations concerning ringing of the doorbell, the delays, and the loss of his car and

keys are not actionable under Title II particularly since the allegations set forth in

the amended complaint make it clear that the plaintiff was not denied access to the

casino, the hotel, or the restaurant at L'Auberge. More importantly, however, the

---

[95]     Rec. Doc. 13 at 25.

[96]     Rec. Doc. 13 at 25.

[97]     *Procter v. Host International, Inc*., No. 3:16-cv-399-LG-RHW, 2017 WL 4779432, at *4
(S.D. Miss. Aug. 2, 2017).

allegations in the amended complaint cannot be read to infer that any of the actions by L'Auberge that the plaintiff complains about were undertaken because of the plaintiff's race or because he was a member of any other protected class. The plaintiff did not allege that he was treated differently from guests at L'Auberge who were not members of a protected class; consequently, he did not show that L'Auberge discriminated against him on the basis of his race or his membership in any other protected class. Any assertion of racial bias in the amended complaint is purely conclusory and speculative. The plaintiff also failed to state a valid Title II claim because he expressly sought to recover damages, which he cannot recover under Title II.[98] Because the amended complaint does not raise a right to relief based on racial discrimination that rises beyond the level of speculation, this Court recommends that the plaintiff's Title II claim should be dismissed for failure to state a claim.[99]

---

[98]    See, e.g., *Lincoln v. Mendler*, No. 18-4542, 2018 WL 4205421, at *2 (E.D. La. Sept. 4, 2018) ("Plaintiff has not stated a claim under [Title II] because he seeks damages. . . which he cannot recover under Title II.").

[99]    A similar result was reached in *D'Aquin v. Starwood Hotels and Worldwide Properties Inc*., No. 15-1963, 2015 WL 5254735, at *3 (E.D. La. Sept. 8, 2015) ("plaintiffs have failed to allege a plausible claim. . . Plaintiffs claim that this treatment was the result of racial animus. However, their assertions of racial bias are conclusory and speculative. Plaintiffs do not set forth their specific grounds for concluding that they were treated differently based on their race. Thus, the amended complaint does not raise a right to relief based on racial discrimination.").

**The Claim Against CIA/FBI**

In the amended complaint, the plaintiff alleged that a default judgment was issued against CIA/FBI in a state-court action. The plaintiff seeks to have this court issue a default judgment CIA/FBI as well. The plaintiff also alleged that CIA/FBI harassed him by "placing cameras in his home, breaking in his home constantly, harassing, [d]iscriminating[,] and plain hatred of Plaintiff."[100] The plaintiff seeks to have this defendant "immediately stop harassing" him.[101]

It is a basic tenet of constitutional law that the United States is immune from suit except to the extent that it has consented to be sued in a Congressional act.[102] "Sovereign immunity is a jurisdictional defense. Without a waiver of sovereign immunity, the court lacks subject-matter jurisdiction to hear a suit against the United States."[103] A party who sues the United States or one of its agencies has the burden of pointing to a congressional act that gives consent for such a suit by showing Congress's unequivocal waiver of sovereign immunity.[104] In this case, the plaintiff

---

[100]    Rec. Doc. 13 at 20.

[101]    Rec. Doc. 13 at 19.

[102]    *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *St. Tammany Parish v. FEMA*, 556 F.3d 307, 316 (5th Cir. 2009).

[103]    *Alexander v. Trump*, No. 17-1081, 2018 WL 1976478, at *3 (W.D. La., Apr. 12, 2018) (citing *Ecker v. United States*, 358 Fed. App'x. 551, 552-53 (5th Cir. 2009)).

[104]    *Spotts v. United States*, 613 F.3d 559, 568 (5th Cir. 2010); *St. Tammany Parish v. FEMA*, 556 F.3d at 315 n. 3.

has not satisfied this burden because he failed to identify a statute that waives sovereign immunity and permits a lawsuit against CIA/FBI under the facts set forth in the amended complaint. Accordingly, this Court finds that the plaintiff failed to establish that the court has federal-question jurisdiction over the plaintiff's claims against CIA/FBI.

Even if the court did have subject-matter jurisdiction over this claim, the plaintiff has not stated a claim on which relief can be granted. The plaintiff seems to ground this claim on RICO and on Section 1981. As pointed out earlier, however, a civil RICO claim cannot be brought against a federal agency. Furthermore, "Section 1981 does not provide a general cause of action for race discrimination" but instead "prohibits intentional race discrimination with respect to certain enumerated activities."[105] There is no allegation that the plaintiff ever contracted with CIA/FBI or had any type of relationship with that alleged agency that falls within the scope of the protections afforded by Section 1981. Accordingly, the plaintiff has not stated a valid claim under that statute. For these reasons, this Court recommends that the plaintiffs' claims against CIA/FBI should be dismissed.

---

[105]    *Arguello v. Conoco, Inc*., 330 F.3d 355, 358 (5th Cir. 2003).

## The Claim Against the EEOC

In the amended complaint, the plaintiff asserted a claim against the EEOC, alleging that it failed to follow its own policies concerning the claim that he filed against that agency regarding his employment with AT&T Mobility by not allowing AT&T Mobility an opportunity to dispute the charges and failing to follow its own protocol on how to investigate a charge. As with his claim against CIA/FBI, the plaintiff failed to show that the court has subject-matter jurisdiction over this claim by failing to identify a congressional act that waives sovereign immunity and permits a lawsuit against the EEOC under the facts set forth in the amended complaint. Accordingly, this Court finds that the plaintiff failed to establish that the court has federal-question jurisdiction over the plaintiff's claims against the EEOC.

Even if the court did have subject-matter jurisdiction over this claim, the plaintiff has not stated a claim on which relief can be granted. The plaintiff seems to ground this claim on RICO and on Section 1981. As discussed above, however, a federal agency such as the EEOC cannot be sued under RICO. Furthermore, the plaintiff failed to allege facts suggesting that he ever contracted with the EEOC or had any type of relationship with that agency that falls within the scope of the protections afforded by Section 1981. Accordingly, the plaintiff has not stated a valid claim under that statute. For these reasons, this Court recommends that the plaintiff's claim against the EEOC should be dismissed.

**<u>Intentional Infliction of Emotional Distress</u>**

The plaintiff asserted a claim for intentional infliction of emotional distress. Intentional infliction of emotional distress is a tort recognized under Louisiana state law.[106] To recover on this claim "a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[107] This Court finds that the plaintiff has not alleged activities that are outrageous enough to support a claim of this type nor has he alleged the type of damages necessary to support this type of claim.

None of the factual allegations set forth in the amended complaint are sufficient to establish that any of the defendants engaged in conduct that was so despicable, extreme, and outrageous as to support this type of claim. The plaintiff's allegations concerning the intentional infliction of emotional distress are conclusory and lacking in factual foundation. Conduct in the workplace is rarely be so severe

---

[106]     *Doss v. Morris*, 86 Fed. App'x 25, 28 (5th Cir. 2004) (quoting *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991)).

[107]     *White v. Monsanto Co.*, 585 So.2d at 1209. See, also, *LaBove v. Raftery*, 2000-1394 (La. 11/28/01), 802 So.2d 566, 577; *Nicholas v. Allstate Ins. Co.*, 1999-2522 (La. 08/31/00), 765 So.2d 1017, 1022.

that it will rise to the level of actionable "outrageous conduct."[108]  The allegations in the amended complaint concerning AT&T Mobility, Sans Chevaux, L'Auberge, and the EEOC certainly fall far short of the level necessary to support such a claim.  The factual allegations concerning CIA/FBI are more egregious, but this Court has found that even those factual allegations are insufficient to state a claim that is cognizable by the court.  Accordingly, this Court now finds that the plaintiff has failed to state a valid claim for the intentional infliction of emotional distress.

**<u>Recommended Dismissal of State-Law Claims</u>**

Two state-law claims were asserted by the plaintiff in the amended complaint: his claim against Sans Chevaux for its alleged failure to provide a required form at the time of the execution of a lease/purchase agreement and his claim for the intentional infliction of emotional distress.  This Court has recommended that the claim for intentional infliction of emotional distress be dismissed, and there is a basis for declining supplemental jurisdiction over both state-law claims.

This Court has already concluded that all of the plaintiff's federal-law claims should be dismissed.  "A federal court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims after all federal claims have

---

[108]    *Deus v. Allstate Ins. Co*., 15 F.3d 506, 514 (5th Cir. 1994); *Wilson v. Monarch Paper Co*., 939 F.2d 1138, 1143 (5th Cir. 1991).

been dismissed."[109]  Although the fact that no federal-law claims remain does not alone divest the court of jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."[110]  "Moreover, the general rule in this circuit is to dismiss state claims when the federal claims they supplement are dismissed."[111]  Therefore, this Court recommends that the court decline to exercise its supplemental jurisdiction and dismiss the plaintiff's state-law claims for intentional infliction of emotional distress and for violation of Louisiana laws regarding real estate transactions that were asserted in the amended complaint.

## Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that the claims asserted in the plaintiff's amended complaint be DISMISSED WITHOUT PREJUDICE for lack of subject-matter

---

[109]    28 U.S.C. § 1367(c)(3); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993).

[110]    *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).

[111]    *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999); *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992); *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).

jurisdiction, for failure to state a claim, or because the court declines to exercise jurisdiction over state-law claims in the absence of federal-law claims.

IT IS FURTHER RECOMMENDED that all pending motions[112] be denied as moot.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[113]

---

[112]   These are the plaintiff's motion for leave to proceed in forma pauperis (Rec. Doc. 2) and the plaintiff's motion for recusal of Magistrate Judge Patrick J. Hanna (Rec. Doc. 10).

[113]   See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).

Signed at Lafayette, Louisiana, this 19th day of March 2019.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE